IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| *Plaintiff*, | ) No. 17 CV 5396 <br> ) <br> ) Honorable John J. Tharp |
| vs. | ) Judge Presiding <br> ) |
| JOHN GABRIEL, | ) <br> ) |
| *Defendant.* | ) |

**PETITIONER'S REPLY TO THE GOVERNMENT'S RESPONSE
TO AMENDED MOTION UNDER 28 U.S.C. § 2255 TO VACATE AND
SET ASIDE JUDGMENT AND SENTENCE**

COMES NOW Petitioner, JOHN GABRIEL, through his attorney, MELISSA A. MATUZAK, and presents the following Reply to the government's response to his Amended Motion Under 28 U.S.C. § 2255 to Vacate or Set Aside the Judgment and Sentence. In further support of his petition, Mr. Gabriel submits the following:

**I.  THE GOVERNMENT HAS FAILED TO REBUT THE SHOWING OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL**

**A.  EMAILS TO TONI**

The government's position that all of the emails sent from email accounts in the names of seven different women are statements of Petitioner and therefore not hearsay, speaks to an important aspect of trial counsel's failure to challenge their admission: counsel made no distinction between each of the seven email accounts, and effectively conceded that the persons whose names were connected with the seven accounts were, in fact, all Petitioner. There was evidence to support a challenge to the government's position that the emails were all statements by Gabriel, but that evidence was not argued to the Court.

For example, contrary to the government's argument at trial that none of the women existed and the women's emails were setup by Petitioner, who masked the registration information through "Easy-Hide" in order to prevent the IP addresses from being traced back to Petitioner: Amity Shaw's email address came back to an IP address in the United Kingdom (Tr. 269); Kelly Meirs's email account was an active account and the IP address resolved back to AT&T (who apparently did not maintain records long enough to provide IP address information) (Tr. 169-70); and Trudy Cohms had an active account, with an IP address that also resolved back to AT&T (Tr. 192-93). In addition, Agent Hartwig's database search using the identifiers provided for each email registration was geographically limited, and it does not appear that the government attempted to contact the email subscriber for any of the five accounts that were still active in late July 2012, including Kelly Meirs, Trudy Cohms, Kelly Fischer, Ti Twindall, and Marie Stennis.

Trial counsel did not challenge the admission of any of the emails from the individual accounts – either as hearsay by showing that they were not statements by Petitioner or that they were offered for their truth in many cases, or under a Rule 403 analysis – which allowed the government to effectively remove any distinction between each individual email account (as well as each individual email), and to admit all of the emails from all of the accounts wholesale.

In response to Petitioner's claim that certain of the emails between the several women and Toni should have been excluded under Rule 403, the government attempts to minimize the prejudicial impact of the contents of the emails by arguing that the emails were critical in order to provide context and to corroborate Toni's testimony. (Govt. Resp. 12). The government's closing argument, however, suggests that the government's purpose in admitting the portions of the emails relating to sexual conduct was to trigger the jury's emotions about an older man

sexually touching a younger woman, in order to connect that behavior directly to the charged conduct. In it's closing, the government told the jury, "His goal was to get her to take those pictures in his home, and he achieved his goal. His goal was to get her to fondle him and let him fondle her, and he achieved his goal." (Tr. 665). Of course, the criminal conduct at issue here is the act of taking of sexually explicit photographs of a 17-year-old (with an interstate commerce connection), it is not the act of engaging in sex with a 17-year-old.

Furthermore, the government argues that the emails with sexual content were critical to support Toni's credibility. At least at the time the emails were admitted, Toni's credibility had not been attacked, and therefore, the evidence admitted for the purpose of enhancing her credibility amounted to improper bolstering. *United States v. Cardena*, 842 F.3d 959, 990 (7th Cir. 2016) (Once a witness's credibility has been attacked, the non-attacking party is permitted to admit evidence to rehabilitate the witness).

The evidence presented relating to sexual contact between Petitioner and Toni was of minimal probative value to the charged conduct, and was unfairly prejudicial because it misled the jury and confused the issues. Trial counsel should have challenged its introduction. Had trial counsel moved to exclude this evidence, it is likely that the evidence would have been excluded under Rule 403.

### B. EDDIE KLINE EMAILS

The government's argument that the Kline emails are not hearsay because they were only offered to provide "context," and were not unfairly prejudicial under a Rule 403 analysis, should be rejected.

The government argues that it offered the emails as "part of its evidence of Petitioner's criminal conduct, in particular his posting of the photos on the internet as Toni had testified. The

3

photo of Toni attached to the email sent to Kline by Margarita was arguably the government's strongest evidence that a photo of Toni was "transmitted or received over the Internet" and therefore "moved in interstate or foreign commerce," as instructed by the Court. (Tr., p. 629). However, though the photograph introduced through the Kline emails was a photo sent by Margarita Hernandez, and the government did not present one shred of evidence to show that Petitioner had any involvement in sending that particular email, or providing the photo of Toni to Margarita.

The government further argues that the emails were not hearsay because they were offered "to corroborate Toni's testimony," and "to both establish context of Kline and Margarita's relationship, to explain why Margarita sent Kline the photo of Toni, and most importantly, to corroborate Toni's testimony that Petitioner told her he had a boy to have sex with her." (Gov. Resp. pp. 13-14). The government's reliance on *United States v. Norton* is misplaced.

In Norton, the defendant objected to the admission of a recorded conversation that included statements of an informant. The informant statements were part of a discussion with the defendant, using coded language, on "how to cut heroin." The Court held that the informant's statements were admissible "to provide context for the words or actions" of the defendant because the informant's statements clarified the defendant's statements about "milk sugar," as referring to heroin. *United States v. Norton*, 893 F.3d 464, 467-68 (7th Cir. 2018).

In the instant case, there was no need to provide context for any words or actions of Petitioner in relation to Eddie Kline, or his emails. Trial counsel should have objected to their admission as inadmissible hearsay.

4

The government's further argument that the Kline emails were not unfairly prejudicial, primarily because "there was evidence linking Gabriel to the storyline behind the Kline emails," (Govt. Resp. p. 14) in unpersuasive. First, the evidence at trial showed that it was Margarita who "introduced" Toni to Kline, via text message (Tr. 249). Second, even with evidence to show that Petitioner was aware that Toni was going to meet with Kline, the government has not shown how that evidence is relevant to the charged conduct in this case. Petitioner relies on his opening Petition in support of his argument that the Kline emails were unfairly prejudicial.

Trial counsel should have challenged the introduction of the Kline emails, both as hearsay, and under Rule 403. Had trial counsel moved to exclude this evidence, it is likely that the evidence would have been excluded.

### C. CRYSTAL LETTERS

Petitioner relies on his Amended Motion and Memorandum in support of his argument that trial counsel was ineffective for failing to move to exclude the Crystal letters due to lack of authentication, and as inadmissible hearsay.

### D. CROSS EXAMINATION OF GABRIEL

The government's argument appears to be that trial counsel opened the door to the line of questioning relating to Margarita Hernandez's pending criminal sexual assault case. Even if that is the case, the error remains. Whether trail counsel invited the testimony or failed to object to the testimony, the fact remains that the testimony allowed the jury to speculate – improperly – that there was additional evidence of Gabriel's guilt, perhaps for some other sexual encounter, as the government's theory was that Gabriel "found" young boys for women, including Margarita, to have sex with. There is no reasonable trial strategy that could possibly explain why counsel would allow such testimony other than – as Petitioner argued in his Petition – to argue to the jury

5

that it was reasonable to infer that Margarita took the photos of Toni as part of Margarita's scheme to entice young boys – including Eddie Kline – to have sex with her. Counsel did not so argue. There was no strategic reason evident in the record for counsel to open the door to this testimony, or to not object to this testimony. Had counsel not opened the door and objected to this testimony, it is likely that objection would have been sustained.

E. IMPEACHMENT OF TONI

The government's argument that Petitioner points to only minor inconsistencies that could not amount to a showing of prejudice is incorrect. AS set forth fully in his Petition, Petitioner points to multiple inconsistencies in Toni's testimony that went unchallenged, such as her testimony as to who "introduced" her to the program, as to the timeline of events, as to where photos of her were posted on the internet, as to what she saw Petitioner do[1], and as to who was present when the photos were taken. These are not minor points, they are critical pieces of information. Furthermore, as the government suggests throughout its response, Toni's credibility was critical to its case. Had trial counsel challenged Toni on these inconsistencies, the jury would have had a more accurate lens through which to judge Toni's credibility. Because counsel did not so challenge, the jury was left with the impression that Toni had always been consistent in the information she provided, which was not the case.

F. IMPEACHMENT OF AGENT HARTWIG

First, the government argues that it would have been "useless" for trial counsel to challenge "Agent Hartwig's testimony that the emails sent under names of fictional characters were actually sent by Petitioner," because the Court found after the trial that the government

---

[1] The government's distinction between uploading and downloading is arguably one of no consequence, as the two terms are commonly used interchangeably by laypersons.

6

provided "ample evidence to which the jury could conclude that Mr. Gabriel was the one sending these emails. . ." (Gov. Resp., p. 24). This argument ignores the fact that the authorship of the emails was what the government sought to prove, and therefore trial counsel should have objected to ensure that the jury understood that authorship had not yet been established. By not objecting, trial counsel effectively conceded authorship, a central focus of the government's case.[2]

Furthermore, Agent Hartwig's testimony that identified Gabriel ("the defendant") as the author of all of the emails sent to Toni was not based on any personal knowledge, as required by Federal Rule of Evidence 602. Agent Hartwig's improper conclusion that Gabriel was the sender of the emails – the fact that the government sought to prove – went unchallenged by trial counsel. In fact, it not only went unchallenged, it was bolstered by trial counsel when counsel elicited testimony from Agent Hartwig that effectively conceded the government's position. Specifically, on cross-examination, Hartwig agreed with defense counsel "that there is no" Di McCarthy, Sarah Weatherby, Kelly Meirs, Amity Shaw, Marie Stennis, or Trudy Cohms. (Tr. 284-85). With no challenge to the government's theory, the jury was left with only one conclusion: that the emails were sent by Petitioner.

Second, the government argues that trial counsel's failure to object to Agent Hartwig's testimony that she found "naked sex-explicit photos of Toni on the computer taken from the defendant's phone," was not ineffective because the transcript is "incorrect," and the word "phone" is a typo. It appears that the government is actually arguing that government counsel misspoke when asking the leading question of Hartwig, and said "phone," instead of "home."

---

[2] Trial counsel did not raise a single objection during the government's presentation of evidence.

The government's explanation is that it only makes sense that the use of the word "phone" was a "typo" because Hartwig also testified that there were computers were taken from Gabriel's home. Whether or not there were computers taken from Gabriel's home, and whether or not there were sexually explicit photos found on any of those computers, does not change the implication of the testimony – that Gabriel used his phone to take photos of Toni. There was no objection, no cross-examination on the testimony, and no correction of the false testimony, which effectively conceded not only the interstate commerce element of the offense, but also conceded Petitioner's guilt. From the perspective of the jury, a government agent testified – unchallenged – that there were sexually explicit photos of Toni taken "from" Petitioner's phone. That is the entire case. There is no trial strategy in the world that could justify not challenging that testimony when there is evidence that Petitioner's phone was examined, and there were no sexually explicit images of Toni found on that phone.

Third, Gabriel agrees with the government's argument that "Perez's statement could easily be read to mean that he saw an email from Gabriel's account sent to Margarita." (Gov. Br., p. 27). The importance of that email is that it was sent from Gabriel's account, purportedly by someone "identifying themselves as Melissa." That someone other than Gabriel was accessing Gabriel's email account critically undermines the government's position that all of the emails sent to Toni were sent by Gabriel.

### G. CLOSING ARGUMENT

First, the government argues that because Petitioner in his own testimony did not accuse Margarita of sending the emails at issue in this case, and because Petitioner testified that he believed Joshua Perez was "trying to get rid" of him, that counsel's decision to not argue the evidence related to Margarita was "not unreasonable." (Gov. Resp., p. 28). The mere fact that

8

Petitioner did not acknowledge that Margarita could have been responsible for more than just the Eddie Kline emails does not dictate that counsel should not argue the evidence to the jury.

Second, as to the dates the photos were created with a web design program, the significance of this evidence goes to the integrity of the information contained in the various emails to Toni. If Petitioner and Toni discussed "the photos on the website" on July 11, but the evidence shows that the photos that Toni said were on that website were not created in the website program until July 12, then it is impossible that the photos discussed in the emails are the photos created by the website program on July 12.

Third, as to Agent Hartwig's failure to provide specific dates of Melissa's photos, Petitioner relies on his argument in his Petition.

Petitioner submits that with his original Petition and this reply, he has shown that trial counsel's failure to challenge the admission of the "Toni emails," failure to challenge the admission of the Eddie Kline emails, failure to challenge the admission of the Crystal letters, failure to effectively cross-examine Toni, failure to effectively cross-examine Agent Hartwig, failure to object to prejudicial cross-examination of Petitioner, and failure to argue a defense in closing based on the evidence, fell below an "objective standard of reasonableness," required by *Strickland v. Washington,* 466 U.S. 668, 688 (1984). Moreover, Petitioner has shown at least "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.,* at 694. Trial counsels' performance at trial fell below an objective standard of reasonableness in several regards, and had it not, the evidence presented at trial would have looked significantly different to the jury. Accordingly, but for counsels' errors, the outcome of the trial would have been different, and Gabriel is entitled to relief.

**II.     THE GOVERNMENT HAS FAILED TO REBUT A SHOWING OF INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO OBJECT TO THE CONSTRUCTIVE AMENDMENT OF THE INDICTMENT**

Petitioner relies on the argument presented in his Amended Motion and Memorandum in support of this claim, and submits that he was denied his Fifth Amendment right to due process of law, due to the constructive amendment of the Indictment in his case.

**III.    THE GOVERNMENT HAS FAILED TO REBUT A SHOWING OF INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL**

Petitioner relies on the argument presented in his Amended Motion and Memorandum in support of this claim.

**IV.     THE GOVERNMENT HAS FAILED TO REBUT A SHOWING THAT IT PRESENTED FALSE TESTIMONY AND DID NOT CORRECT THE RECORD**

Petitioner relies on the argument presented in his Amended Motion and Memorandum, as well as the argument presented in Section I., Subsection F., supra.

**V.      A HEARING IS WARRANTED**

A district court must grant an evidentiary hearing if a petitioner "alleges facts that, if proven, would entitle him to relief." *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015) (internal citation omitted). In his original Amended Motion and Memorandum and in this Reply, Petition has presented facts that, if proven, would entitle him to relief. Accordingly, this Court must grant an evidentiary hearing in this matter.

**CONCLUSION**

For all of the reasons stated herein and in his Amended Motion and Memorandum, Movant John Gabriel requests that the Court:

(a)     Hold an evidentiary hearing on the claims he has brought; and

  (b)  Grant appropriate relief under 28 U.S.C. § 2255, including

    1.  Dismissal of the indictment; or

    2.  a new trial.

              Respectfully submitted:

              /s/ *Melissa A. Matuzak*
              MELISSA A. MATUZAK

Melissa A. Matuzak
Law Office of Melissa A. Matuzak
53 West Jackson Blvd.
Suite 1650
Chicago, Illinois 60604
(312)986-1985
melissamatuzak@gmail.com

## **CERTIFICATE OF SERVICE**

      Melissa A. Matuzak, Attorney at Law, hereby certifies that the foregoing Reply to the Government's Response to Petitioner's Amended Motion To Vacate And Set Aside Judgment And Sentence Pursuant To 28 U.S.C. § 2255, was filed on November 12, 2018, in accordance with Fed.R.Civ.P.5., LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

                                                                       /s/ *Melissa A. Matuzak*
                                                                      **MELISSA A. MATUZAK**

**LAW OFFICE OF MELISSA A. MATUZAK**
53 West Jackson Boulevard
Suite 1650
Chicago, Illinois 60604
Tel: (312) 986-1985
Fax: (312) 663-3707
melissamatuzak@gmail.com